IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TUITIONFUND, LLC | § | |
| _Plaintiff_ | § | |
| | § | |
| v. | § | CASE NO.: 3:11-CV-00069 |
| | § | |
| SUNTRUST BANKS, INC.; | § | JUDGE SHARP |
| SUNTRUST BANK; | § | MAGISTRATE JUDGE GRIFFIN |
| REGIONS FINANCIAL CORPORATION; | § | |
| REGIONS BANK; | § | JURY DEMANDED |
| VESDIA CORPORATION; | § | |
| CARTERA COMMERCE, INC.; | § | |
| CARDLYTICS, INC., | § | |
| _Defendants_ | § | |

## SUPPLEMENTAL CASE MANAGEMENT ORDER

### A.     JURISDICTION

This Court has jurisdiction over Plaintiff's claims under the patent laws of the

United States, Title 35 of the United States Code, including 35 U.S.C. §271 _et seq._ and 28

U.S.C. §1338.

### B.     BRIEF THEORIES OF THE PARTIES

#### 1.     Plaintiff's Theory of the Case.

Plaintiff TuitionFund, LLC ("Plaintiff") brought this patent infringement case

seeking damages for direct, indirect, joint and willful infringement of United States

Patent No. 7,499,872 ("the '872 Patent"), United States Patent No. 7,653,572 ("the '572

Patent"), and United States Patent No. 7,899,704 ("the '704 patent") (collectively the

"Patents-in-Suit"). The inventions disclosed in the Patents-in-Suit relate generally to the

field of merchant-funded rewards programs, where a merchant or merchants agree to provide a rebate or reward to a purchaser who makes a qualifying purchase with the merchant. The purchaser generally can elect to (i) save or invest the rebate, (ii) spend it on goods or services (though not necessarily at the merchant who provided the rebate), (iii) use the rebate to pay an obligation, or (iv) donate all or a part of the rebate to a charitable cause.

Traditional customer rewards and/or loyalty programs have existed for some time. The rewards programs in existence prior to the Patents-in-Suit often took one of two forms: (1) intra-company rewards, where a retailer offered a reward or rebate that could only be redeemed for value at the participating retailer offering the reward; and (2) bank-funded or card-funded rewards programs, where banks or credit card companies not only sponsored, but also funded, the customer rewards (such as cash back in a bank account) in exchange for a certain level of spending.

These earlier forms of rewards programs had certain limitations. For example, many of the intra-company rewards programs required the consumer to present a loyalty card to the sponsoring retailer at the time of purchase to be eligible for the reward. Over time, with changes in regulations governing the banking industry, particularly those involving limits on interest rates on credit cards and limits on interchange fees for debit or credit cards, it has become more onerous for banks and credit card companies to offer bank-funded or card-funded rewards. In response, certain banks began looking for ways to continue to offer a customer rewards program, without being obligated to fund the rewards themselves. The Defendants have used the inventions embodied in the Patents-in-Suit to solve this problem, as these Defendants now offer bank-sponsored but

merchant-funded rewards programs, but they do so in violation of the Patents-in-Suit.

Before any other companies began offering these bank-sponsored, merchant-funded rewards programs, Michael P. Thompson, the inventor of the Patents-in-Suit, had already designed his invention, filed for his first patent, and was hard at work building TuitionFund into a company to commercialize these inventions. Mr. Thompson's goal was to design methods and systems for a merchant-funded rewards program that could operate in a transparent manner, for both the participating merchant and the participating member, free of the many limitations of rewards systems that existed prior to his new inventions. Mr. Thompson's inventions lower the total cost of participation for a prospective participating merchant, and the transparent nature of the invention encourages more merchant and member participation, creating value and benefits to the Defendants infringing the Patents-in-Suit.

TuitionFund has more than a dozen investors who believed in these patented concepts and invested in the company's efforts to commercialize. The company has held several meetings with representatives of some of the Defendants, as well as with certain Defendants in the parallel proceeding involving the same patents-in-suit. Throughout these meetings, the Defendants were made aware of TuitionFund's patented systems. However, the Defendants refused to license TuitionFund's technology, and instead rolled out bank-sponsored, merchant-funded rewards programs to their customers – in direct violation of TuitionFund's patents.

Plaintiff is seeking damages to compensate it for its damages sustained in the past, a reasonable royalty for infringement that occurs in the future, trebled damages pursuant to 35 U.S.C. Section 284(2) due to Defendants' willful infringement, attorneys' fees as an

exceptional case under 35 U.S.C. § 285, and an injunction to prevent the Defendants from selling, offering to sell, manufacturing, using, or importing in the United States any of the accused products, systems or processes.

Plaintiff contends that Defendants cannot meet their burden to prove by clear and convincing evidence that the Patents-in-Suit are invalid or unenforceable. TuitionFund further believes that this Court is the proper venue to resolve this dispute.

**2.    Defendants' Theory of the Case.**

Plaintiff TuitionFund has accused two small technology companies, Vesdia and Cardlytics, along with their customers (the banks) of infringing its patents. A review of the claims of TuitionFund's U.S. Patent Nos. 7,499,872; 7,653,572, and 7,899,704 ("TuitionFund patents") demonstrates that the patents are (i) not infringed by any one entity or collection of entities, (ii) invalid in light of prior art, as recognized by the Patent Office in the currently pending reexamination, and (iii) invalid because they are directed to a non-patentable mental process, as explained in the recent *CyberSource Corp. v. Retail Decisions, Inc.* 654 F.3d 1366 (Fed. Cir. 2011) and *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) (en banc). Consequently, none of the Defendants infringe any claim of the TuitionFund patents.

None of the Defendants perform or control <u>all</u> of the elements of any independent claim of the TuitionFund patents. There are multiple independent parties in the accused programs that each provide a service to support the program. The multiple independent parties include at least a credit payment provider, an issuer processor, numerous (unrelated) merchant point of sale ("POS") processors, a loyalty rewards processor, a merchant rewards processor, and an issuing bank. Each of these independent parties performs only certain steps or control only certain components of the accused program, if

4

any, required in each independent claim of the TuitionFund patents. In particular, none of the Defendants conduct the required steps of (1) monitoring all debit and credit card account transaction information from each of the registered merchants and (2) crediting higher education or educational accounts with rebates. The only party who could possibly monitor all of a registered merchant's credit and debit card transactions is an individual merchant's POS processor and the merchant POS processors are not related to the Defendants. Additionally, Defendants do not believe that any merchant POS processor monitors all transactions in the way required by the TuitionFund patents.

Direct patent infringement requires a single actor to practice every element of a patent claim, which is not the case here. There can be no indirect infringement such as contributory infringement or inducement to infringe because indirect infringement also requires a showing of a direct infringement by a single actor, which is also not the case here. It is now well settled Federal Circuit law that to prove infringement, a single actor must be shown to commit the entire act of direct infringement. The TuitionFund patents are a classic example of divided infringement among numerous parties who are not in an agency relationship with one another. The Defendants are not in a "principal/agent" relationship, but are in a vendor and customer relationship, wherein each is free to terminate the relationship at any time. Accordingly, the actions of any one entity cannot be attributed to another. Therefore, TuitionFund has no joint infringement theory which would result in a finding of infringement of the TuitionFund patents.

In contrast to the claims of the TuitionFund patents, only the merchant POS processor monitors all of the debit and/or credit card transactions from any particular registered merchant, but not as required by the TuitionFund patent claims. While some

5

of Defendants may monitor a sampling of debit and/or credit card transactions from members who use a respective SunTrust credit/debit card or Regions credit/debit card to make the purchase (i.e., only some of a particular registered merchant's debit and/or credit card transactions), none of the Defendants receive information about debit and/or credit card transactions made by customers at a registered merchant and made with another issuing bank's card. Therefore, none of the Defendants monitor "all transactions" as required by the TuitionFund patents.

During prosecution of TuitionFund's U.S. Patent No. 7,499,872 ("'872 patent") the limitation "monitor all of said debit and credit card account transaction information . . . associated with a registered merchant to determine if said transactions are consummated with registered members using said registered member card accounts . . ." was added to each independent claim in an Amendment to overcome a rejection based at least in part on PCT Application WO 94/04979 ("Hart"). The U.S. Patent Examiner who examined the '872 patent provided a Statement of Reasons for Allowance stating that "the claims are considered to be patentable wherein all of the debit and/or credit card transactions of registered merchants are tracked and monitored at the card transaction processing sites and are not by or at the merchant sites" (emphasis from original). Accordingly, based on well established legal principles, TuitionFund is estopped from asserting that any claim of the TuitionFund patents covers anything other than a system where a rebate manager monitors all debit and/or credit card transactions and is entitled to no equivalence thereof. None of the Defendants monitor all of the debit and/or credit card transactions of a registered merchant and, therefore, can not infringe any claim of the TuitionFund patents, even if they are valid.

If the TuitionFund patents are construed so broadly as to cover the accused programs, the broadly construed claims of the TuitionFund patents are invalid, as anticipated and/or obvious in view of numerous prior art references, as reflected in recent patent office action in the inter partes reexamination of the patents-in-suit. There, the patent examiner issued office actions finding virtually all of the claims of the TuitionFund patents invalid on June 30, 2011 in light of prior art identified by the Vesdia Defendants. The TuitionFund patents are also invalid based on prior use and on-sale offers for sale of prior art merchant rewards systems in this country.

Additionally, as made clear in the recent *CyberSource* decision, the TuitionFund patents are invalid as claiming an unpatentable mental process. In *CyberSource*, the Federal Circuit found that a credit card processing method similar to the TuitionFund patents was merely an unpatentable mental process. In addition, the TuitionFund patents are unenforceable as being written under 35 U.S.C. § 112.

## C. ISSUES RESOLVED:

The following motions filed by Defendants have been ruled on by the Court:

1. SunTrust Banks, Inc., SunTrust Bank, Vesdia Corporation, and Cartera Commerce, Inc. Amended Motion to Dismiss for Failure to State a Claim (Docket Entry No. 106) has been denied pursuant to the Court's Order dated April 20, 2012 (Dkt. No. 181);

2. SunTrust Banks, Inc., SunTrust Bank, Vesdia Corporation and Cartera Commerce, Inc. Amended Motion to Sever Claims (Docket Entry. No. 108) has been denied without prejudice pursuant to the Court's Order dated April 20, 2012 (Dkt. No. 181);

3. SunTrust Banks, Inc., SunTrust Bank, Vesdia Corporation and Cartera Commerce, Inc. Amended Motion to Transfer Venue (Docket Entry No. 110) has been denied without prejudice pursuant to the Court's Order dated April 20, 2012 (Dkt. No. 181);

4. Regions Financial Corp., Regions Bank, and Cardlytics, Inc. Amended Motion to Dismiss for Failure to State a Claim (Docket Entry No. 112) has been denied pursuant to the Court's Order dated April 20, 2012 (Dkt. No. 181);

5. The Motions to Stay Pending Resolution of the Pre-Answers Motions (Docket Nos. 163 & 166) have been denied as moot pursuant to the Court's Order dated April 20, 2012 (Dkt. No. 181).

**D. ISSUES STILL IN DISPUTE:**

There are no pending issues requiring resolution by the Court at this time.

**E. STATUS OF PLEADINGS AND AMENDMENTS:**

The parties shall file all Motions to Amend Pleadings on or before May 21, 2012.

**F. DISCOVERY AND CLAIM CONSTRUCTION DEADLINES:**

Where the parties were not able to reach agreement, the competing proposals of the parties are identified.

**1. Initial Disclosures.**

The parties have exchanged initial disclosures pursuant to Fed. R. Civ. Pro. 26(a)(1).

**2. Fact Discovery.**

Fact discovery shall open on May 4, 2012 and shall be completed by 60 days after the Court enters a final claim construction Order.

### 3. Infringement and Invalidity Contentions and Associated Discovery.

#### a. Plaintiff's Preliminary Infringement Claim Chart

On or before June 4, 2012, Plaintiff shall serve on Defendants a Preliminary Infringement Claim Chart that includes at least the following: (i) Identification of each claim of the Patents-in-Suit that is allegedly infringed by Defendants; and (ii) For each allegedly infringing claim, identification of the accused product, device, process or method of which Plaintiff is aware, showing where Plaintiff contends each element of each allegedly infringing claim is found in each accused instrumentality.

#### b. Defendants' Preliminary Invalidity Claim Chart

On or before July 9, 2012, Defendants shall serve on Plaintiff a Preliminary Invalidity Claim Chart that includes at least the following: (i) Identification of each item of prior art relied upon by Defendants that alone or in combination with another reference renders a claim of one of the Patents-in-Suit invalid under 35 U.S.C. §§ 102 or 103; (ii) Identification of whether each listed item of prior art anticipates or renders obvious a claim of the Patents-in-Suit, including identification of combinations of items that make a claim obvious; (iii) a chart identifying where in each item of prior art each element of each asserted claim is found; and (iv) any grounds of invalidity based on a provision of 35 U.S.C. § 112.

#### c. Defendants' Preliminary Non-Infringement Chart

On or before August 6, 2012, Defendants shall serve on Plaintiff a Preliminary Non-Infringement Chart that includes at least the following: (i) an acknowledgement or denial of whether each claim element of each asserted claim contained in Plaintiff's Preliminary Infringement Claim Chart is found within each accused product, device, process or method and (ii) identification of sufficient information to show the operation

or composition of each accused product, device, process or method identified in the Preliminary Infringement Claim Chart.

### d. Plaintiff's Preliminary Validity Chart

On or before September 5, 2012, Plaintiff shall serve on Defendants a Preliminary Validity Chart that includes at least the following: (i) an acknowledgement or denial of whether the identified prior art reference or item and prior art combinations includes the identified element of the claim of the Patents-in-Suit and, if denied, why the identified prior art reference or item does not include the respective claim element; (ii) an identification of any grounds for a contention that there are secondary indicia of nonobviousness relating to the patents-in-suit; (iii) an acknowledgement or denial of whether any claim identified by Defendants is invalid based on a provision of 35 U.S.C. § 112 and, if denied, why the identified claim is valid under 35 U.S.C. § 112.

### e. Final Infringement Claim Charts and Final Invalidity Claim Charts

Within 14 days after the Court enters a Final Claim Construction Order, Plaintiff shall serve on Defendants Final Infringement Claim Charts and Defendants shall serve on Plaintiff Final Invalidity Claim Charts. For any additional claims asserted or additional products accused, the Final Infringement and Validity Claim Charts should contain a concise explanation of why such additional claims are asserted or additional products are accused. For any additional prior art relied on by Defendants, the Final Response Chart should contain a concise explanation of why such additional prior art is asserted.

### f. Final Validity Claim Chart and Final Non-Infringement Claim Chart

Within 14 days of the service of the Final Claim Charts as set forth in Section F(3)(e) *supra*, Plaintiff shall serve on Defendants a Final Validity Claim Chart and Defendants shall serve on Plaintiff a Final Non-Infringement Claim Chart.

### g. Additional Information To Be Provided By Plaintiff

On or before June 4, 2012, Plaintiff shall provide the following (together with any English translations of the documents completed prior to litigation):

    a.  A copy of the patents-in-suit and their file histories

    b.  Copies of related United States patents and patent applications with their file histories, and corresponding foreign patents and patent applications with their file histories

    c.  All licenses, assignment, or other ownership documents for the patents-in-suit or related or corresponding foreign patents (current or expired) which do not have confidentiality provisions or which plaintiff has been able to obtain permission to produce without an order of the Court. If plaintiff does not produce any agreement of which it is aware of relating to the patents-in-suit, it shall identify the parties to such agreement, the date of execution, the general subject matter of the agreement, and the reason for not producing it.

    d.  All rulings in any other cases in which the-patents-in-suit, or any foreign counterpart patents to either the patents-in-suit or any related patent, has been asserted, regarding claim construction, infringement, validity, license defense, enforceability, and any other defenses.

e. All deposition transcripts and exhibits marked therein, of the inventor of either the patents-in-suit or any Rule 30(b)(6) deponent, form any other proceeding in which either the patents-in-suit or any related patent were asserted.

f. Documents sufficient to evidence each discussion with, disclosure to, or other manner of providing or using the claimed invention prior to the issuance of the patents-in-suit.

g. All documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the issuance of the patents-in-suit.

h. All documents in plaintiff's possession, custody, or control that may constitute prior art to the patents-in-suit.

i. To the extent these items are in the possession, custody or control of Plaintiff, documents sufficient to show the operation and architecture of any other system that Plaintiff believes is covered by the patents-in-suit and has been used, offered for use or sale, or sold by or for the Plaintiff, or any predecessor-in-interest to the patents-in-suit.

The duty to supplement such productions under FRCP 26 shall apply from that point forward.

**h.      Additional Information To Be Provided By Defendants**

On or before August 6, 2012, Defendants shall provide the following (together with any English translations of the documents completed prior to litigation):

a. Documents sufficient to show the structure and operation of the accused functionality for each accused system. This does not limit Plaintiff's right to seek other documents through discovery.

b. Each item or combination of prior art that Defendants contend anticipates or renders obvious each specified claim of the patents-in-suit or is relevant to such a defense.

The duty to supplement such productions under FRCP 26 shall apply from that point forward.

### 4. Initial Privilege Log

Within fifteen (15) days of producing documents, the producing party shall also produce a privilege log, identifying all documents withheld as privileged, the date of each withheld document, the recipient(s) of each withheld document, the general subject matter of each withheld document, and the privilege asserted justifying the document's withholding. The parties shall not be required to log attorney-client communications dated after the filing of the instant lawsuit on their privilege logs. The parties further agree that the deadline to produce supplemental privilege logs shall be fifteen (15) days after subsequent document productions.

### 5. Claim Construction Deadlines

#### a. Exchange Of Proposed Claim Terms For Construction

The parties shall exchange proposed claim terms for construction by July 27, 2012.

### b.    Exchange Of Preliminary Claim Constructions.

The parties shall exchange Preliminary Claim Constructions by August 27, 2012. Each party shall list in their Preliminary Claim Constructions any extrinsic evidence to be relied upon in construction of the respective terms. Within fifteen (15) days after the exchanged proposed claim terms, the parties shall meet and confer in order to attempt to reach agreement on as many constructions as possible.

### c.    Submission Of Joint Claim Construction Statement

By September 27, 2012, the parties shall submit a Joint Claim Construction Statement with a list of terms to be defined by the Court, setting forth for each term either an agreed definition, or each party's proposed definitions for each term where this no agreed definition.

### d.    Deadline For Initial Briefs On Claim Construction Issues

Initial briefs by each party on claim construction issues shall be filed by October 26, 2012.

### e.    Deadline For Reply Briefs On Claim Construction Issues

Reply briefs by each party on claim construction issues shall be filed by November 20, 2013.

### f.    Markman Hearing

A hearing on the claim construction issues (*Markman* hearing) shall be on Friday, December 7, 2012, at 10:00 a.m.

## G.    DISCOVERY AND DISCOVERY MOTIONS:

The parties agree that no motions concerning discovery are to be filed until after the parties have conferred in good faith and, unable to resolve their differences, have scheduled and participated in a conference telephone call with Judge Griffin.

## H.    LIMITATIONS ON DISCOVERY

The parties agree to the following limitations on discovery regarding Requests for Admission and Interrogatories.  The parties disagree over the limits of deposition discovery in this case.

### 1.    Requests for Admission

Plaintiff may not serve on any Defendant Group[1] more than fifty (50) requests for admission, including parts and subparts, without leave of court.  Each Defendant Group may not serve on Plaintiff more than fifty (50) requests for admission, including parts and subparts, without leave of court.

### 2.    Interrogatories

Each side is allowed fifteen (15) interrogatories in total on common issues and each party is allowed an additional fifteen (15) interrogatories for non-common issues as to each responsive party.

### 3.    Depositions

Plaintiff can conduct up to ten (10) depositions of each Defendant Group and/or its employees, as described in the contemporaneously entered order.

The defendants collectively can conduct up to twenty (20) depositions of the plaintiff

---

[1] Defendant Groups for purposes of this section and discovery limitations referenced herein are as follows: (1) SunTrust Banks, Inc., SunTrust Bank, Vesdia Corporation, and Cartera Commerce, Inc. (the "Vesdia Defendants"), and (2) Regions Financial Corporation, Regions Bank, and Cardlytics, Inc. (the "Cardlytics Defendants).

and/or its employees.

If the parties decide, due to information obtained during discovery, that more depositions are required, they may seek leave from the Court to take additional depositions.

## I.    PROTECTIVE ORDER

The parties anticipate the need to enter into a standard two-tier protective order to safeguard confidential and proprietary business information. An agreed proposed Protective Order, or competing versions of a disputed proposed Protective Order, shall be submitted to the Court by the parties within fifteen (15) days after the service of Initial Disclosure set forth in Section F(1) *supra.*

## J.    DISCLOSURE OF EXPERTS

No later than 30 days after the close of fact discovery, the parties shall make the expert disclosures required by FRCP 26 on the issues on which the party bears the burden of proof ("Initial Expert Disclosures"). No later than 30 days after the service of these Initial Expert Disclosures, each party shall make its Rebuttal Expert Disclosures, providing the disclosures required by FRCP 26 on the issues on which the opposing party bears the burden of proof. These expert disclosures shall apply to all issues other than claim construction.

## K.    DEPOSITIONS OF EXPERT WITNESSES

The parties shall depose all expert witnesses within 30 days after service of the Rebuttal Expert Disclosures.

The parties will meet and confer to determine appropriate limits to expert witness discovery once expert reports are submitted.

## L.  JOINT MEDIATION OR SETTLEMENT CONFERENCE

The parties have not yet determined at this stage of the proceedings whether a settlement conference or mediation would be productive, but believe a settlement conference at or near the close of fact or expert discovery may be productive.

## M.  DISCOVERY, PRE-TRIAL AND DISPOSITIVE MOTIONS

Briefs on any motion shall not exceed 20 pages.[2]  The parties shall file all dispositive motions no later than 45 days after the Court enters a Final Claim Construction Order.  Responses to dispositive motions shall be filed within 30 days after service. Optional Replies shall be filed within 10 days after service of the Response.

## N.  ELECTRONIC DISCOVERY

The parties agree to the Model Discovery Order with regard to E-Discovery in Patent Cases (copy attached hereto), thereby assisting the parties in obtaining cost-effective e-discovery.  Should any party determine that more custodians are required, the parties shall meet and confer in order to attempt to reach agreement and if agreement can not be reached, an application to the Court for leave to conduct additional discovery may be filed.

---

[2] The parties will be advised whether this 20 page limit shall apply to the briefs pertaining to claim construction.

Specifically, the parties agree that the Model Discovery shall apply to each party.[3] Plaintiff will initially identify up to five (5) custodians of each defendant group as defined in the contemporaneously entered order, and Defendants will collectively identify five (5) custodians of Plaintiff whose electronic records should be searched for documents responsive to the opposing party's requests for electronic documents.

**O.     ESTIMATED TRIAL TIME**

The parties estimate trial to last approximately ten (10) days.

**P.     OTHER MATTERS**

A jury of ten has been requested.

**IT IS SO ORDERED.**

_____

**HON. JULIET GRIFFIN**
**United States Magistrate Judge**

---

[3] For purposes of the application of the Model Discovery Order the following applies: SunTrust Banks, Inc. and SunTrust Bank are considered one party; Regions Financial Corporation and Regions Bank are considered one party; and Vesdia Corporation, Cartera Commerce, Inc., Cardlytics, Inc. and TuitionFund LLC are each considered separate parties.

Approved for entry by:                                Dated:  May 9, 2012

/s/ Scott P. Tift
George Edward Barrett
David W. Garrison
Scott P. Tift
BARRETT JOHNSTON, LLC
217 Second Avenue, N
Nashville, TN 37201
(615) 244-2202
Fax: (615) 252-3798
dgarrison@barrettjohnston.com
gbarrett@barrettjohnston.com
stift@barrettjohnston.com

Anthony K. Bruster
Edward K. Chin
Drake Martin
NIX, PATTERSON & ROACH, LLP
5215 North O'Connor Boulevard
Suite 1900
Irving, TX 75039
(972) 831-1188
Fax: (972) 444-0716
akbruster@nixlawfirm.com
edchin@me.com
drakemartin@nixlawfirm.com

Ben King
Louis B. Paddock
NIX, PATTERSON & ROACH, LLP
2900 St. Michael Drive
Suite 500
Texarkana, TX 75503
(903) 223-3999
Fax: (903) 223-8520
benking@nixlawfirm.com
bpaddock@nixlawfirm.com

Brian A. Carlson
Natalie D. Swider
Steven H. Slater
SLATER & MATSIL LLP
17950 Preston Road
Suite 1000

Dallas, TX 75252
(972) 732-1001
Fax: (972) 732-9218
bcarlson@slater-matsil.com
swider@slater-matsil.com
slater@slater-matsil.com

Derek T. Gilliland
NIX, PATTERSON & ROACH, LLP
205 Linda Drive
Daingerfield, TX 75638
(903) 645-7333
Fax: (903) 645-3827
dgilliland@nixlawfirm.com

*Attorneys for Plaintiff TuitionFund, LLC*


/s/ John D. Simmons by SPT w/ permissions
Robert S. Patterson, Esquire (No. 6189)
Melissa Ballengee Alexander (No. 19956)
BRADLEY ARANT BOULT CUMMINGS LLP
Roundabout Plaza
1600 Division Street, Suite 700
Nashville, TN 37203
Telephone: (615) 252-2326
Facsimile: (615) 252-6326
bpatterson@babc.com
malexander@babc.com

John D. Simmons, Esquire (admitted *pro hac vice*)
Dennis J. Butler, Esquire (admitted *pro hac vice*)
Christina D. Frangiosa, Esquire (admitted *pro hac vice*)
Mark T. Vogelbacker, Esquire (admitted *pro hac vice*)
PANITCH SCHWARZE BELISARIO & NADEL, LLP
One Commerce Square
2005 Market Street, Suite 2200
Philadelphia, PA 19103
Telephone:  (215) 965-1330
Facsimile:   (215) 965-1331
jsimmons@panitchlaw.com
dbutler@pantichlaw.com
cfrangiosa@panitchlaw.com
mvogelbacker@panitchlaw.com

*Attorneys for Defendants, SunTrust Banks, Inc., SunTrust Bank, Cartera Commerce, Inc.*
*and Vesdia Corporation*

/s/ Michael S. Connor by SPT w/ permissions
Robert E. Boston (TN Bar # 9744)
Joseph A. Woodruff (TN Bar # 012869)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
(615) 244-6380
Fax: (615) 244-6804
bob.boston@wallerlaw.com
woody.woodruff@wallerlaw.com

Brian J. Malcom (admitted pro *hac vice*)
WALLER LANSDEN DORTCH & DAVIS, LLP
1901 Sixth Avenue North, Ste 1400
Birmingham, AL 35203
Tel: (205) 226-5706
Fax: (205) 214-8787
Email: brian.malcom@wallerlaw.com

Michael S. Connor, Esq. (admitted *pro hac vice*)
M. Scott Stevens, Esq. (*pro hac vice* motion pending)
ALSTON & BIRD LLP
101 S. Tryon St., Suite 4000
Charlotte, NC 28280
(704) 444-1000
Fax: (704) 444-1111
mike.connor@alston.com
scott.stevens@alston.com

Matthew Urbanawiz, Esq. (admitted *pro hac vice*)
Daniel L. Huynh, Esq. (admitted *pro hac vice*)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
(404) 881-7000
Fax (404) 881-7777
matt.urbanawiz@alston.com
daniel.huynh@alston.com

*Attorneys for Defendants Regions Bank*, *Regions
Financial Corp., and Cardlytics*, *Inc*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2012, the foregoing *Supplemental Case Management Order* was electronically filed with the Clerk of the Court using CM/ECF and served upon all counsel of record.

Robert S. Patterson, Esquire (No. 6189)
Melissa Ballengee Alexander (No. 19956)
BRADLEY ARANT BOULT CUMMINGS LLP
Roundabout Plaza
1600 Division Street, Suite 700
Nashville, TN 37203
Telephone: (615) 252-2326
Facsimile: (615) 252-6326
bpatterson@babc.com
malexander@babc.com

John D. Simmons, Esquire (admitted *pro hac vice*)
Dennis J. Butler, Esquire (admitted *pro hac vice*)
Christina D. Frangiosa, Esquire (admitted *pro hac vice*)
Mark T. Vogelbacker, Esquire (admitted *pro hac vice*)
PANITCH SCHWARZE BELISARIO & NADEL, LLP
One Commerce Square
2005 Market Street, Suite 2200
Philadelphia, PA 19103
Telephone:  (215) 965-1330
Facsimile:      (215) 965-1331
jsimmons@panitchlaw.com
dbutler@panitchlaw.com
cfrangiosa@panitchlaw.com
mvogelbacker@panitchlaw.com

*Attorneys for Defendants, SunTrust Banks, Inc., SunTrust Bank, Cartera Commerce, Inc. and Vesdia Corporation*

Robert E. Boston (TN Bar # 9744)
Joseph A. Woodruff (TN Bar # 012869)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
(615) 244-6380
Fax: (615) 244-6804
bob.boston@wallerlaw.com
woody.woodruff@wallerlaw.com

Brian J. Malcom (admitted pr*o hac vice*)
WALLER LANSDEN DORTCH & DAVIS, LLP

1901 Sixth Avenue North, Ste 1400
Birmingham, AL 35203
Tel: (205) 226-5706
Fax: (205) 214-8787
Email: brian.malcom@wallerlaw.com

Michael S. Connor, Esq. (admitted *pro hac vice*)
M. Scott Stevens, Esq. (*pro hac vice* motion pending)
ALSTON & BIRD LLP
101 S. Tryon St., Suite 4000
Charlotte, NC 28280
(704) 444-1000
Fax: (704) 444-1111
mike.connor@alston.com
scott.stevens@alston.com

Matthew Urbanawiz, Esq. (admitted *pro hac vice*)
Daniel L. Huynh, Esq. (admitted *pro hac vice*)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
(404) 881-7000
Fax (404) 881-7777
matt.urbanawiz@alston.com
daniel.huynh@alston.com

*Attorneys for Defendants Regions Bank, Regions
Financial Corp., and Cardlytics, Inc*

/s/ Scott P. Tift
SCOTT P. TIFT
BARRETT JOHNSTON, LLC

Addendum: Discovery Model Order

|                 |            |          |
| --------------- | ---------- | -------- |
|                 | Plaintiff, |          |
| v.              |            | Case No. |
|                 | Defendant. |          |

**[MODEL] ORDER REGARDING E-DISCOVERY IN PATENT CASES**

The Court ORDERS as follows:

1.     This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2.     This Order may be modified for good cause. The parties shall jointly submit any proposed modifications within 30 days after the Federal Rule of Civil Procedure 16 conference. If the parties cannot resolve their disagreements regarding these modifications, the parties shall submit their competing proposals and a summary of their dispute.

3.     Costs will be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics will be cost-shifting considerations.

4.     A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

5.     General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include metadata absent a showing of good cause. However, fields showing the date and time that the document was sent and received, as well as the complete distribution list, shall generally be included in the production.

6.     General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email parties must propound specific email production requests.

7.     Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

8.     Email production requests shall be phased to occur after the parties have

exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances. While this provision does not require the production of such information, the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case.

9. Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe.

10. Each requesting party shall limit its email production requests to a total of five custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for up to five additional custodians per producing party, upon showing a distinct need based on the size, complexity, and issues of this specific case. Should a party serve email production requests for additional custodians beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, the requesting party shall bear all reasonable costs caused by such additional discovery.

11. Each requesting party shall limit its email production requests to a total of five search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for up to five additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and

"system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, the requesting party shall bear all reasonable costs caused by such additional discovery.

12. The receiving party shall not use ESI that the producing party asserts is attorney-client privileged or work product protected to challenge the privilege or protection.

13. Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.

14. The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.